IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| JAMES EDWARD MOTT, § | |
| § | |
| Petitioner, § | |
| § | |
| V. § | |
| § | No. 3:13-cv-582-P-BN |
| WILLIAM STEPHENS, Director § | |
| Texas Department of Criminal Justice, § | |
| Correctional Institutions Division, § | |
| § | |
| Respondent. § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE
<u>UNITED STATES MAGISTRATE JUDGE</u>**

Petitioner James Edward Mott, a Texas prisoner, has filed an application for writ of habeas corpus pursuant to 28 U.S.C. § 2254. For the reasons stated herein, the application should be denied.

**Background**

On or about March 10, 2008, Ellis County homeowners R.J. and K.J. were out of town. Their son went by their house and noticed that the entry door was open and that the glass pane on the door was broken. When R.J. and K.J. returned home, they discovered that a number of items were missing, including a laptop computer, two cameras, jewelry, a pistol, and numerous personal documents. Among the jewelry that had been taken were commemorative coins from a Las Vegas casino and a gold Krugerrand coin. The next day, Petitioner visited Dallas Gold and Silver Exchange with two individuals, Macy Martin and Christy Martin, and pawned gaming coins and

a gold Krugerrand coin. Just eight days later, a stolen white 2004 Chevrolet pickup was recovered by Desoto police. Inside the pickup were various documents belonging to K.J. and R.J., including birth and death certificates, a driver's license, military discharge papers, and a wedding photograph of the parents of R.J. The pickup matched the description of a truck that was seen driving away from the home of R.J. and K.J. near the time of the robbery and the VIN number of the vehicle matched a number allegedly given by Petitioner to Macy Martin on or about the day of the burglary.

Based on information provided by Macy Martin and surveillance video from the Dallas Gold and Silver Exchange, Ellis County Sheriff's Office deputies obtained a warrant for Petitioner's arrest. Petitioner was arrested at a pawnshop where he was attempting to sell a four-wheeled ATV. Petitioner was carrying a driver's license that included his picture but listed another person's name. After Petitioner's arrest, K.J. asked to view a picture of the individual who had been arrested. When shown the picture of Petitioner, K.J. identified him as someone she had seen at her door approximately a week before the burglary.

Petitioner was charged with burglary of a habitation and tampering with a governmental record by an Ellis County grand jury. He was found guilty on both counts at trial. The jury then found an enhancement paragraph to be true and sentenced Petitioner to a term of 80 years of imprisonment for the burglary offense and five years of imprisonment on the tampering offense. His convictions and sentences were affirmed on direct appeal. *See Mott v. State,* Nos. 10-10-00056-CR & 10-10-00057-CR, 2010 WL 5117251 (Tex. App. – Waco, Dec. 15, 2010, pet. ref'd). Petitioner filed an application for

state post-conviction relief, which was denied without written order on the findings of the trial court. *See Ex parte Mott,* WR-73,111-03 (Tex. Crim. App. Oct. 31, 2012).

Petitioner then filed this action in federal district court, alleging that: (1) the trial court erred in permitting a suggestive pretrial identification procedure; (2) his conviction resulted from prosecutorial misconduct because the prosecutor (a) withheld exculpatory evidence; (b) argued facts that were not in evidence; and (c) elicited perjured testimony from a trial witness; (3) Petitioner received ineffective assistance of counsel when his trial attorney (a) failed to conduct a thorough pretrial investigation, (b) neglected to convey the state's plea offer; (c) did not object to the prosecutor's use of facts not in evidence; and (d) failed to object to the perjured testimony of a trial witness; and (4) Petitioner received ineffective assistance of counsel on appeal because his attorney (a) did not raise trial counsel's ineffective assistance and (b) failed to challenge the admission of a suggestive pretrial identification procedure by the trial court.

Respondent filed an answer, *see* Dkt. No. 23, Petitioner submitted a reply brief, *see* Dkt. No. 24, and the habeas application is now ripe for consideration.

## Legal Standards

Where, as here, a state court has already rejected a claim on the merits, a federal court may grant habeas relief on that claim only if the state court adjudication:

(1)     resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2)     resulted in a decision that was based on an unreasonable

> determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). A state court decision is "contrary" to clearly established federal law if "it relies on legal rules that directly conflict with prior holdings of the Supreme Court or if it reaches a different conclusion than the Supreme Court on materially indistinguishable facts." *Busby v. Dretke*, 359 F.3d 708, 713 (5th Cir. 2004). A decision constitutes an "unreasonable application" of clearly established federal law if "the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Williams v. Taylor*, 529 U.S. 362, 413 (2000).

The Court must presume that a state court's factual determinations are correct and can find those factual findings unreasonable only where the petitioner "rebut[s] the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *Gardner v. Johnson*, 247 F.3d 551, 560 (5th Cir. 2001). This presumption applies not only to explicit findings of fact but also "to those unarticulated findings which are necessary to the state court's conclusions of mixed law and fact." *Valdez v. Cockrell*, 274 F.3d 941, 948 n.11 (5th Cir. 2001); *see also Harrington v. Richter*, 131 S. Ct. 770, 784 (2011) ("[D]etermining whether a state court's decision resulted from an unreasonable legal or factual conclusion does not require that there be an opinion from the state court explaining the state court's reasoning").

The Sixth Amendment to the United States Constitution guarantees a defendant reasonably effective assistance of counsel at all critical stages of a criminal proceeding.

*See Cuyler v. Sullivan*, 446 U.S. 335, 344 (1980). To prevail on an ineffective assistance of counsel claim, a habeas petitioner must satisfy the two-prong test established in *Strickland v. Washington*, 466 U.S. 668 (1984). *See Cullen v. Pinholster*, 131 S. Ct. 1388, 1403 (2011). First, the petitioner must demonstrate that the performance of his attorney fell below an objective standard of reasonableness. *See Strickland*, 466 U.S. at 687-88. To be cognizable under *Strickland*, trial counsel's error must be "so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687. Second, the petitioner must prove that he was prejudiced by his attorney's substandard performance. *See id.* at 687, 692. "This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 687.

> [B]ecause of the risk that hindsight bias will cloud a court's review of counsel's trial strategy, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy."

*Feldman v. Thaler*, 695 F.3d 372, 378 (5th Cir. 2012) (quoting *Strickland,* 466 U.S. at 689), *cert. denied,* 133 S.Ct. 1584 (2013).

And, to demonstrate prejudice, Petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland,* 466 U.S. at 694. "The likelihood of a different result must be substantial, not just conceivable." *Harrington,* 131 S. Ct. at

792.

To prove ineffective assistance of appellate counsel, a petitioner must show that the decision not to raise an issue on appeal fell below an objective standard of reasonableness. *United States v. Phillips*, 210 F.3d 345, 348 (5th Cir. 2000). "This reasonableness standard requires counsel 'to research relevant facts and law, or make an informed decision that certain avenues will not prove fruitful. Solid, meritorious arguments based on directly controlling precedent should be discovered and brought to the court's attention.'" *Id.* (quoting *Williamson*, 183 F.3d at 462-63).

Finally, where, as here, the state court adjudicated an ineffective assistance claim on the merits, this Court must review Petitioner's claim under the doubly deferential standards of both *Strickland* and Section 2254(d). In such cases, the "pivotal question" for this Court is not "whether defense counsel's performance fell below *Strickland*'s standard" – it is "whether the state court's application of the *Strickland* standard was unreasonable." *Harrington,* 131 S. Ct. at 785.

**Analysis**

Trial Court Error

Petitioner alleges that the trial court erred in permitting an in-court identification tainted by a suggestive pretrial identification procedure. The "admission of evidence deriving from suggestive identification procedures" can violate the due process rights of criminal defendants. *See Neil v. Biggers*, 409 U.S. 188, 196 (1972); *see also Simmons v. United States,* 390 U.S. 377, 384 (1968). Convictions based on eyewitness identification at trial following a challenged pretrial identification "will be

set aside on that ground only if the ... identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." *Simmons*, 390 U.S. at 384; *see also Manson v. Brathwaite*, 432 U.S. 98, 114 (1977). Courts employ a two-step analysis to determine whether there is a *Simmons* violation: "first, we determine whether the identification procedure was impermissibly suggestive; if it was, we determine whether, under the totality of the circumstances, the suggestiveness led to a substantial likelihood of irreparable misidentification." *United States v. Burbridge*, 252 F.3d 775, 780 (5th Cir. 2001).

Initially, it does not appear that there was a pretrial identification procedure at all – much less a suggestive one – in this case. As the Waco Court of Appeals observed, "[K.J.] testified that she asked to see a picture of the person arrested for the burglary of her home. [K.J.] was not shown a photo lineup for identification purposes. [K.J.] was not a witness to the burglary." *Mott*, 2010 WL 5117251, at *3; *see also* Dkt. No. 20-3 at 106 (state habeas findings summarizing appellate court's finding that K.J. "was not an eyewitness who was viewing a photo lineup for identification purposes"). Unlike the typical police-instigated lineup procedure that results in a questionable identification, the witness here asked to view a picture of the individual who was arrested for burglarizing her house while she was away. *See* Dkt. No. 16-3 at 61-62. K.J. did not identify Petitioner as the perpetrator of the crime but instead stated that she had seen him at her front door shortly before the burglary occurred. *See id.* at 62-63. That is, she identified the Petitioner as someone she had seen before, not as the individual who committed the crime.

Even if this scenario constitutes a pretrial identification procedure, Petitioner has failed to establish that the state habeas court's denial of the claim unreasonably applied clearly established federal law or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented. There is no evidence that the viewing of the photograph of Petitioner led to an unreliable identification, since the testimony at trial established that K.J. had extensive opportunity to view the individual at her front door, she paid close attention, and she expressed certainty that the individual was Petitioner. *See id.* at 62-65; *see also Manson*, 432 U.S. at 114. Petitioner does not establish that the circumstances of K.J.'s identification of him as the individual who had visited her house at some point before the burglary resulted in a substantial likelihood of misidentification.

Accordingly, this claim should be denied.

Prosecutorial Misconduct

Petitioner next claims that his conviction was the result of prosecutorial misconduct because the state prosecutor withheld exculpatory evidence, argued facts that were not in evidence, and elicited perjured testimony from a trial witness.

*Alleged Brady Violation*

The prosecution has a duty to disclose all evidence favorable to the defendant in a criminal case. *See Brady v. Maryland*, 373 U.S. 83, 87 (1963). To establish a *Brady* violation, a habeas petitioner "'must show that (1) the prosecution suppressed evidence, (2) the evidence was favorable to the defense, and (3) the evidence was material' to his guilt or punishment." *Mahler v. Kaylo*, 537 F.3d 494, 500 (5th Cir. 2008) (quoting

*Lawrence v. Lensing*, 42 F.3d 255, 257 (5th Cir. 1994)) Petitioner contends that the prosecutor had possession of a receipt from Bubba's Pawn Shop that would have established that he was not at the home of K.J. and R.J. at the time of the burglary. *See* Dkt. No. 9 at 20-22. On habeas review, the state court held that

> [t]he receipt ... does not support the inference that Applicant suggests – an alibi for the time of the offense. The receipt does include the date of March 10, 2008, but also includes an entry that the property pawned on March 10, 2008, was redeemed on March 25, 2008. Thus, the "time of day" entry at 9:36 a.m. just as likely refers to March 25, 2008, as to March 10, 2008. The pawn receipt does not prove that Applicant was not at the site of the burglary on the morning of March 10, 2008. According to the testimony at trial, the burglary could have occurred any time between 6:00 a.m. and 7:00 p.m. on March 10, 2008. [A] review of the evidence secured at the time of Applicant's arrest does not support his contention that there would have been another pawn receipt dated on March 10, 2008, that was suppressed by the prosecution.

Dkt. No. 20-3 at 110. Petitioner does not submit any clear and convincing evidence to rebut these factual findings. The receipt itself is not clearly favorable evidence that was material to Petitioner's guilt, since it is unclear when he visited the pawn shop and the testimony at trial indicates that the burglary could have taken place during a large window of time. Accordingly, Petitioner cannot establish that the state habeas court's rejection of his *Brady* claim was unreasonable in any way.

*Arguing Facts Not in Evidence*

Petitioner next claims that the prosecutor committed misconduct when he argued in closing argument that a trial witness testified that he saw a "white male" leave the home of K.J. and R.J. in a white pickup truck near the time of the burglary. *See* Dkt. No. 9 at 22-24. The witness testified only that he had seen a "young man, 25

to 35 years old, walking back to his truck from their front door." Dkt. No. 16-3 at 33-34. However, the prosecutor argued in closing that the witness claimed to have observed a "white male." *See* Dkt. No. 16-4 at 49 & 51.

In analyzing allegedly improper remarks made by a prosecutor during closing arguments, "[t]he relevant question is whether the prosecutors' comments 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Darden v. Wainwright,* 477 U.S. 168, 181 (1986) (quoting *Donnelly v. DeChristoforo,* 416 U.S. 637, 643 (1974)); *see also United States v. Hitt,* 473 F.3d 146, 161 (5th Cir. 2006) (improper prosecutorial comments require reversal only when, "taken as a whole in the context of the entire case, [they] prejudicially affected the substantial rights of the defendant"). The relevant factors for a court to consider in this analysis are the magnitude of the prejudicial effect of the prosecutor's remarks, the efficacy of any cautionary instruction by the judge, and the strength of the evidence supporting the conviction. *See id; see also Geiger v. Cain,* 540 F.3d 303, 308 (5th Cir. 2008) (conviction will not be set aside on federal habeas review unless the prosecutor's conduct "was persistent and pronounced or that the evidence of guilt was so insubstantial that the conviction would not have occurred but for the improper remarks").

Considering this claim on habeas review, the state trial court explained:

In preparing for the trial of the cases against Applicant, [the prosecutor] spoke with the witness ... on February 9, 2009. That witness recounted to [the prosecutor] that he had observed a young white male about 30-35 years of age in a white Chevrolet pickup from the mid-1990's walking around the victims' house on the day of the burglary. That information was consistent with the information contained in the police report. [The prosecutor] included that information during his opening statement,

> anticipating that would be the testimony of [the witness] at trial. [The prosecutor] did not realize at the time that [the witness's] trial testimony had omitted the word "white" in describing the young man, so he also included that as part of the closing statement. [The prosecutor] did not deliberately include facts that were outside the record in his closing to the jury in an attempt to mislead or influence the jury.

Dkt. No. 20-3 at 106-07. Petitioner has failed to establish that the state court's findings were unreasonable in any way. A review of the witness's testimony and the prosecutor's closing argument does not suggest that any improper recitation of the facts elicited during testimony was so pronounced as to prejudicially affect Petitioner's rights. A reasonable jury certainly could have found Petitioner guilty absent the allegedly improper statements.

*Alleged Perjury of Witness Macy Martin*

Petitioner also contends that the prosecutor knowingly permitted witness Macy Martin to commit perjury at trial. Petitioner alleges that Martin "committed perjury when she lied about having a conversation with Petitioner over the phone and alleges that she wrote the information in her notebook." Dkt. No. 9 at 25. In addition, Petitioner claims that the prosecutor knew that the handwriting said to be Macy Martin's was not hers and that it was Petitioner, rather than Martin, who wrote the information in the notebook. *See id.* at 25-26.

The Due Process Clause prohibits the use of perjured testimony to obtain a conviction. *See Giglio v. United States,* 405 U.S. 150, 153 (1972); *see also Black v. Collins,* 962 F.2d 394, 407 (5th Cir. 1992). In order to establish a due process violation based on the use of perjured testimony, a habeas petitioner must prove that: (1) the

-11-

testimony was false; (2) the prosecutor knew it was false; and (3) the evidence was material. *See Blackmon v. Scott,* 22 F.3d 560, 565 (5th Cir. 1994). False testimony is material if "'there is any reasonable likelihood that the false testimony could have affected the judgment of the jury.'" *Creel v. Johnson,* 162 F.3d 385, 391 (5th Cir. 1998) (quoting *Kirkpatrick v. Whitley,* 992 F.2d 491, 497 (5th Cir. 1993)).

Here, Petitioner argues that he himself wrote the vehicle information in the notebook, since Macy and her mother had the truck and sold it to Petitioner. *See* Dkt. No. 9 at 26. On state habeas review, the court held:

> Regarding the testimony of Macy Martin related to the information written in her notebook, it was [the prosecutor]'s understanding at all times that Martin had written the information in the notebook herself. [The prosecutor] did not ask Martin to change her story in any way and would have no reason to ask her to testify that she had written the information rather than [Petitioner]. The fact that [Petitioner] had written the information in the notebook would have provided even greater connection between him and the vehicle that had been found with property stolen from the victims. [The prosecutor] has no knowledge that the testimony given by Martin was not true and did not knowingly use any perjured testimony in the trial of these cases.

Dkt. No. 20-3 at 107.

Petitioner does not provide any evidence to support his conclusory claim that it was his handwriting, rather than Macy Martin's. He does not establish that any part of Martin's testimony was knowingly false, that the prosecutor knew it was false, or that the information was material to his guilt. Conclusory allegations do not merit habeas relief. *See Ross v. Estelle,* 694 F.2d 1008, 1012 (5th Cir. 1983). Petitioner does not establish that the state court's findings were unreasonable in any way.

Ineffective Assistance of Trial Counsel

Petitioner alleges that he received ineffective assistance of counsel when his trial attorney, Mary Lou Shipley, failed to conduct a thorough pretrial investigation, neglected to convey the state's seven-year plea offer, did not object to the prosecutor's use of facts not in evidence, and failed to object to the perjured testimony of a trial witness.

*Pretrial Investigation*

Petitioner claims that his attorney "failed to conduct an independent investigation into relevant facts and circumstances, failed to develop or present evidence for the defense of Petitioner, also failed to interview potential alibi witnesses or question other witnesses provided by the police report." Dkt. No. 9 at 12. Essentially, Petitioner claims that his attorney failed to gather and present evidence that he was at Bubba's Pawn Shop on the day of the offense or speak to the owner of the shop, and neglected to make contact with Petitioner's family members. *Id.* at 12-13. The state habeas judge denied this ineffective assistance claim, explaining:

> Applicant mentions "Joey" in his memorandum as the nephew of the owner of Bubba's Pawnshop and as a possible witness. According to [a letter sent to the prosecutor], Joey is a friend of Applicant's whom Applicant believed would help him destroy evidence of items Applicant had pawned that would connect Applicant to other offenses.
>
> ***
>
> Applicant never informed Shipley of an alibi defense. Applicant gave Shipley the name of two witnesses.... Shipley had subpoenas issued and attempted to serve the subpoenas, but the residences were vacant and she could not locate any other addresses. The only family member that Applicant identified to Shipley was his mother, Lillie Liebel. Shipley

> spoke with Liebel, but Liebel declined to appear to testify on behalf of Applicant, stating that her husband was ill.
>
> ***
>
> Shipley does not recall whether Applicant requested her to research his pawn shop records, but she did not do so. Shipley believed the pawn records would have only shown that he previously pawned items.

Dkt. No. 20-3 at 108-09.

"A defendant who alleges a failure to investigate on the part of his counsel must allege with specificity what the investigation would have revealed and how it would have altered the outcome of the trial." *United States v. Green*, 882 F.2d 999, 1003 (5th Cir. 1989). Petitioner does not allege with specificity what the investigation would have revealed or the missing testimony's substance, and Petitioner fails to explain how the investigation's results or the testimony would have changed the outcome of the trial. In addition, there is no evidence that any witness was available to testify at trial, the contents of any such witness's testimony, or that the testimony would have been favorable. As explained above, the only alleged alibi evidence – a receipt from Bubba's Pawn Shop which includes the date of the burglary – does not necessarily conflict with the jury's finding of guilt. Petitioner does not prove that the state court's determination was unreasonable; accordingly, he is not entitled to relief on this issue.

*Failure to Convey Plea Offer*

Petitioner next claims that his counsel failed to convey a pretrial offer of seven years imprisonment allegedly offered by the State and only informed him of a plea offer of 10 years confinement. *See* Dkt. No. 9 at 14-16. The failure of trial counsel to inform

a defendant about a government plea offer may amount to ineffective assistance of counsel. *See Missouri v. Frye,* 132 S. Ct. 1399, 1408 (2012); *Teague v. Scott,* 60 F.3d 1167, 1171 (5th Cir. 1995). However, the state habeas court in this case credited the sworn affidavit testimony of Shipley that she did, in fact, inform Petitioner of the state's offer of seven years imprisonment. *See* Dkt. No. 20-3 at 108. That court explained:

> Shipley's records indicate that the offer for seven years was made on September 29, the same date that [the prosecutor] states that he met with Shipley to provide discovery. Shipley personally conveyed the offer to Applicant when she visited him in jail on October 2, 2008. At no time did Applicant indicate that he would accept any plea offer. The seven-year offer was withdrawn on October 15, 2008. On October 29, 2008, Shipley advised [the prosecutor] that she believed Applicant would never plead to the burglary and that they would need to try the case. Applicant's claim that he did not know of the seven-year offer and that he would have accepted that offer is not credible.

*Id.* at 108-09. "A trial court's credibility determinations made on the basis of conflicting evidence are entitled to a strong presumption of correctness and are 'virtually unreviewable' by the federal courts." *Pippin v. Dretke,* 434 F.3d 782, 792 (5th Cir. 2005). Petitioner has failed to show that this factual determination was unreasonable in light of the evidence.

*Facts Not in Evidence and Allegedly Perjured Testimony*

Petitioner also faults his attorney for failing to object to the prosecutor's closing argument or Macy Martin's alleged perjured testimony. *See* Dkt. No. 9 at 16-20. Initially, Petitioner cannot establish that he was prejudiced by his attorney's failure to object to the prosecutor's closing argument. In evaluating complaints of improper

argument, the Court must first consider whether the prosecutor's comments were indeed improper. *See United States v. Parker,* 877 F.2d 327, 332 (5th Cir. 1989). Even if the argument was improper, Petitioner must also show that counsel's failure to lodge an objection was harmful, that is, whether the comment so infected the trial with unfairness as to make the resulting conviction a denial of due process. *See id.*; *see also Darden,* 477 U.S. at 181. Here, Petitioner has failed to establish that the isolated incident whereby the prosecutor cited facts not in evidence was so prejudicial as to violate his constitutional rights. He similarly fails to prove that the state courts acted unreasonably in overruling his ineffective assistance claim.

As discussed above, Petitioner has not provided any evidence, aside from his own conclusory claims, to suggest that Macy Martin committed perjury at his trial. It is well settled that an attorney is not ineffective for failing to raise a meritless objection. *See Clark v. Collins,* 19 F.3d 959, 966 (5th Cir. 1994) ("Failure to raise meritless objections is not ineffective lawyering; it is the very opposite."). The state court explained:

> Applicant may have told Shipley during trial that Martin's testimony was false, but Shipley had no way to disprove it except through vigorous cross-examination. The opinion of the Tenth Court of Appeals mentions Shipley's cross-examination of Martin and concludes that Applicant did not demonstrate deficient performance.

Dkt. No. 20-3 at 109 (citing *Mott,* 2010 WL 5117251, at *3). Petitioner has failed to establish that the state courts' denial of this claim was unreasonable.

Accordingly, this claim should be denied.

Ineffective Assistance of Appellate Counsel

Petitioner contends that he received ineffective assistance of counsel on appeal because his appellate attorney, Zach Redington, failed to challenge the pretrial identification procedure and did not raise trial counsel's failure to object to the prosecutor's closing argument. *See* Dkt. No. 9 at 7-10.

"The Constitution does not require appellate counsel to raise every nonfrivolous ground that might be pressed on appeal." *Ellis v. Lynaugh*, 873 F.2d 830, 840 (5th Cir. 1989); *see also Jones v. Barnes*, 463 U.S. 745, 751 (1983) ("Neither *Anders* nor any other decision of this Court suggests, however, that the indigent defendant has a constitutional right to compel appointed counsel to press nonfrivolous points requested by the client, if counsel, as a matter of professional judgment, decides not to present those points."); *id.* at 754 (holding that "[f]or judges to second-guess reasonable professional judgments and impose on appointed counsel a duty to raise every 'colorable' claim suggested by a client would disserve the very goal of vigorous and effective advocacy that underlies *Anders*" and that "[n]othing in the Constitution or our interpretation of that document requires such a standard"). Instead, counsel is obligated only to raise and brief those issues that are believed to have the best chance of success. *See Schaetzle v. Cockrell*, 343 F.3d 440, 445 (5th Cir. 2003).

On direct appeal, Redington raised two issues: that the evidence was legally and factually insufficient to support conviction and that Petitioner received ineffective assistance of counsel when his trial attorney failed to object to evidence of extraneous offenses and neglected to move to suppress the identification of Petitioner by K.J. *See*

*Mott*, 2010 WL 5117251, at *1 & *3; *see also* Dkt. No. 20-3 at 106. Therefore, Petitioner's first claim – that Redington should have raised trial counsel's failure to challenge the pretrial identification – is wholly without merit.

In addition, Petitioner has failed to establish that his conviction would have been reversed had either of these allegedly unraised claims been raised on direct appeal. Trial counsel was not ineffective under *Strickland* for failing to raise claims that failed on habeas review. *See Coker v. Thaler*, 670 F. Supp.2d 541, 554 (N.D. Tex. 2009) (appellate counsel was not ineffective for failing to appeal conviction on grounds that were considered and rejected on collateral review). This ground for relief should be overruled.

<u>Cumulative Error</u>

Petitioner also invokes the cumulative error doctrine. *See* Dkt. No. 9 at 11. It is well settled in the Fifth Circuit that cumulative error is an independent basis for federal habeas corpus relief where the individual errors involved matters of constitutional dimension that, taken together, "so infected the entire trial that the resulting conviction violates due process." *Westley v. Johnson,* 83 F.3d 714, 726 (5th Cir. 1996) (citing *Derden v. McNeel,* 978 F.2d 1453, 1454 (5th Cir. 1992)). Neither meritless claims nor claims that are not prejudicial can be cumulated, regardless of the total number of such errors raised. *See Derden*, 978 F.2d at 1461. Petitioner has not shown that the alleged errors, as a whole, cast doubt upon the reasonableness of the state court's determination. As discussed above, none of the Petitioner's claims in the present case has merit, and he has not proven that the alleged errors caused prejudice.

## Recommendation

Petitioner's application for writ of habeas corpus should be denied.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: November 18, 2013

_____
DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE